UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Garden City Boxing Club, Inc.,  :
    Plaintiff,  :
      :
v.  :    Case No. 3:06cv1424 (JBA)
      :
Franco A. Frezza, individually and :
d/b/a Franco's Grub & Pub,  :
    Defendant.  :

**RULING ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [DOC. # 9]**

Plaintiff Garden City Boxing Club, Inc. ("Garden City") brought this action against Franco A. Frezza, individually and doing business as Franco's Grub & Pub, for alleged violations of the Communications Act of 1934, as amended, 47 U.S.C. § 605 et seq., and the Cable & Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. § 553 et seq., and also asserting a claim for common law conversion in connection with defendants' alleged broadcast of the Oscar De La Hoya v. Shane Mosley II Super Welterweight Championship Fight Program (the "Program"), to which Garden City had been granted the exclusive nationwide television distribution rights. See Compl. [Doc. # 1]. Defendants having failed to appear, answer or otherwise respond the Company, default was entered pursuant to Fed. R. Civ. P. 55(a) on November 6, 2006, and no motion to set aside the default having been filed, plaintiff filed the instant Motion for Default Judgment [Doc. # 9].

1

**I. Factual Background**

Because default has entered against defendants, the Court accepts as true all of the factual allegations of the Complaint, except those relating to damages. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). The Complaint states that plaintiff paid for and was granted the exclusive nationwide television distribution rights to the Program, which took place on September 13, 2003, and pursuant to contract, plaintiff entered into sublicensing agreements with various entities "by which it granted these entities limited sublicensing rights, specifically the rights to publicly exhibit the Program to the patrons within their respective establishments (i.e., hotels, racetracks, casinos, bars, taverns, restaurants, social clubs, etc.)." Compl. ¶¶ 10-11. The Complaint further claims that "[w]ith full knowledge that the Program was not to be intercepted, received and exhibited by entities unauthorized to do so, each and every of the above named defendants and/or their agents, servants, workmen or employees did unlawfully publish, divulge and exhibit the Program at the time of its transmission at the address of their respective establishments [and] [s]aid unauthorized interception, publication, exhibition and divulgence by each of the defendants was done willfully and for purposes of direct or indirect commercial advantage or private financial gain." Id. ¶ 13.

Further, the affidavit of Joseph M. Gagliardi, President of Garden City, submitted in support of the Motion for Default Judgment [Doc. # 9-2] explains that "to the best of [his] knowledge [Garden City's] programming is not and cannot be mistakenly, innocently or accidentally intercepted," but rather can only be accomplished by unlawful means. Gagliardi Aff. ¶ 8. Mr. Gagliardi also represents that "the unchecked activity of signal piracy not only has resulted in [Garden City's] loss of several millions of dollars of revenue, but also has a detrimental effect upon lawful residential and commercial customers of cable and satellite broadcasting whose costs of service are increased significantly by these illegal activities, including the depravation [sic] of tax revenue to communities where [Garden City's] potential customers reside, and the denial of benefits such tax revenue would provide the residents of such communities." Id. ¶ 10. Plaintiff also submits the affidavit of a personal investigator who visited defendants' establishment located in Derby, Connecticut on the night of September 13, 2003, and observed the Program being broadcast on the television at the far end of the bar. See Hoda Aff. [Doc. # 9-3].

**II. Discussion**

<u>Cable & Television Consumer Protection and Competition Act</u>

The Cable & Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. § 553 et seq., prohibits

3

"[u]nauthorized interception or receipt or assistance in interception or receiving service," including, inter alia, intercepting, receiving, or assisting in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law. 47 U.S.C. § 533(a). The statute also provides a private right of action for persons aggrieved by violation thereof, including actions for damages. Id. § 533(c). The aggrieved party may elect to recover either actual or statutory damages, the latter in an amount of $250-$10,000 per violation, unless the violation is found to be committed "willfully and for purposes of commercial advantage or private financial gain," in which case "the court in its discretion may increase the award of damages . . . by an amount of not more than $50,000." Id. § 533(c)(A)(3). The statute further states that "[i]n any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100." Id.

Here, the allegations of plaintiff's Complaint, which are deemed admitted, establish that defendants intercepted, without authorization, plaintiff's broadcast of the Program and did so willfully and for purposes of commercial advantage or private

4

financial gain. Mr. Gagliardi's Affidavit also establishes that the interception which defendants apparently accomplished, in order to broadcast the Program on September 13, 2003 as attested to by Mr. Hoda, cannot be done mistakenly, accidentally, or innocently. "In addition, the court may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct." <u>J&J Sports Prods., Inc. v. Drake</u>, No. 06cv246 (ILG)(RML), 2006 WL 2927163, at *5 (E.D.N.Y. Oct. 11, 2006). The applicable range for statutory damages is between $250 and $10,000, although given the willfulness and personal financial purpose with which defendants committed the violation, the Court has the authority to increase the damages award by as much as $50,000. <u>However</u>, it is well-established, although not acknowledged by plaintiff, "that a claimant who establishes liability under both 47 U.S.C. §§ 553 and 605 may only recover damages under one section," <u>Kingvision Pay-Per-View Ltd. v. Palaguachi</u>, No. 06cv2509 FBRER, 2007 WL 42994, at *2 n.1 (E.D.N.Y. Jan. 3, 2007), and thus, because § 605 provides for a greater discretionary "willfulness" enhancement (up to an additional $100,000), the Court will consider award of damages under that section only, <u>see</u> <u>infra</u>. <u>See</u> <u>also</u> <u>Garden City Boxing Club, Inc. v. Polanco</u>, No. 05civ3411 (DC), 2006 WL 305458, at *5 (S.D.N.Y. Feb.7, 2006) ("If a defendant has violated both

Section 553 and Section 605, the [c]ourt should award damages only under Section 605.") (citing Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993) ("If [Section 605] was violated and [the plaintiff] was aggrieved thereby, the court should grant [the plaintiff's] request for damages under § 605(e) instead of granting the lesser damages under § 553.")).

Communications Act

The Communications Act of 1934, as amended, 47 U.S.C. § 605 et seq., provides, inter alia, "no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or public the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception . . ." Section 605(e)(3) provides for a private right of action for violations, including for recovery of actual or statutory damages. For the same reasons discussed above with respect to § 553, the allegations of plaintiff's Complaint, which are deemed admitted, and the affidavits submitted by plaintiff with its Motion for Default Judgment establish violation of § 605 willfully and for the purpose of commercial advantage of private financial gain. As with § 553, § 605 provides for a range of statutory damages ($1,000 to $10,000 per violation), which may be enhanced by up to an additional $100,000 for violations committed willfully and for purposes of

6

"direct or indirect commercial advantage of private financial gain." 47 U.S.C. § 605(e)(3)(C).

Plaintiff states that it seeks an award of maximum statutory damages, but cites that amount, for violations of both § 605 and § 553, as $50,000. Plaintiff appears to confuse the maximum <u>criminal</u> penalty for violation, see <u>id</u>. § 605(e)(2), with the maximum award of statutory damages in a private civil action, which can amount to $110,000 (maximum of $10,000 in statutory damages, plus up to an additional $100,000 for willful violations done for commercial advantage or private financial gain). Additionally, because plaintiff seeks an award of damages under both § 605 and § 553, which is not permitted, see <u>supra</u>, it seeks a total combined statutory damages award of $100,000. Having clarified the proper statutory framework for an award of damages here, the Court must determine the appropriate award of statutory damages, within the range of $1,000 to $10,000, plus up to an additional $100,000 for the willful violation established.

"The award of damages under section 605(e)(3)(C)(i) is committed to the Court's sound discretion [and] [c]ourts have used a variety of methods to calculate damages under section 605, including (1) assessing the maximum statutory rate, (2) estimating the amount of services the defendant pirated and applying a multiplier to that figure, (3) adopting the plaintiff's estimate of the amount of services pirated, and (4)

7

where there has been no evidence of the plaintiff's actual usage or commercial advantage, applying the statutory minimum for each pirated device." DIRECTV, Inc. v. Montes, 338 F. Supp. 2d 352, 355 (D. Conn. 2004). Other courts have considered the following factors: "the pecuniary loss sustained by the victim as a result of the offense, the financial resources of the defendant, . . . the financial needs and earning ability of the defendant . . . as well as the burden that a damage award would impose on the defendant relative to the burden alternative relief would impose." Kingvision Pay-Per-View Ltd. v. Palaguachi, 2007 WL 42994, at *3. Moreover, "[s]ome courts have awarded flat amounts when calculating damages" whereas "[o]ther courts have assessed damages by multiplying the number of patrons who viewed the event by the amount an individual would pay to view the program at home on a pay-per-view channel." Id. (citing cases).

Here, plaintiff has established only one instance of illegal interception/receipt by defendants, and has not offered any evidence of lost revenue or the value of what defendants obtained. Moreover, the amount obtained by defendants appears to be minimal, in the amount of a $5 cover charge x 33 people present, totaling only $165, plus whatever increase in beverage sales earned by broadcasting the Program, and defendants have not been shown to have ample financial resources, as they appear to operate only one small commercial establishment in Derby,

Connecticut. However, plaintiff has established knowing and willful violation, for commercial advantage and/or private financial gain, and explains the loss in revenue and detrimental effect upon lawful residential and commercial cable customers as a result of signal piracy, which interest and concomitant need for deterrence other courts have recognized, see, e.g., Kingvision Pay-Per-View, Ltd. v. Mendez, No. 03cv2170 (NGG)(CLP), 2006 WL 3833014, at *5 (E.D.N.Y. Dec. 28, 2006). Accordingly, taking into account awards granted by other courts in this district under similar circumstances, the Court will award $5,000 in statutory damages, plus an additional $10,000 for the willful nature of defendants' violation, done for commercial advantage and/or private financial gain. See, e.g., id. (awarding $10,000 in enhanced damages); Garden City Boxing Club, Inc. v. Polanco, 2006 WL 305458, at *5 (noting previous awards of $5,000 in statutory damages, but deciding to award $2,000 in statutory damages, plus an additional $10,000 for willful violation); Top Rank Inc. v. Tacos Mexicanos, No. 01 CV 5977, 2003 WL 21143072, at *5 (E.D.N.Y. Mar. 28, 2003) (awarding $10,000 in enhanced damages, noting "Courts deciding similar cases have not awarded the maximum statutory amount available").

Plaintiff also seeks an award of attorneys fees and costs, which are mandatory under 47 U.S.C. § 605(e)(3)(B)(iii) ("The court -- . . . shall direct the recovery of full costs, including

awarding reasonable attorneys' fees to an aggrieved party who prevails.") (emphasis added). Plaintiff's counsel details in her affidavit costs in the amount of $493.60 ($350.00 for the filing of the Complaint and $143.60 for service of process), but does not document or otherwise support the reasonableness of plaintiff's claim for attorneys' fees in the amount of $2,500. Accordingly, the Court will award plaintiff the claimed $493.60 in costs only.

### Conversion

With respect to plaintiff's claim of conversion, while plaintiff pleads that defendants obtained possession of the Program, wrongfully converted it to their own use, and did so willfully, maliciously, and intentionally to harm plaintiff and subject it to economic distress, plaintiff has offered no explanation for why these acts should entitle it to any additional damages which would be non-duplicative of the damages already awarded. As noted above, allegations concerning damages are not deemed admitted upon an entry of default, and plaintiff offers no support for or explanation of the $2,000 in damages sought for its conversion claim. Accordingly, as any such damages appear to be duplicative of the damages already awarded for the Communications Act violation proved by the allegations of defendants' conduct, and plaintiff has offered no independent support for their amount, no additional damages will be awarded.

10

**III. Conclusion**

For the foregoing reasons, plaintiff's Motion for Default Judgment [Doc. # 9] is GRANTED and judgment will enter in plaintiff's favor in the amount of $15,000, plus $493.60 in costs. Plaintiff may file a supplemental affidavit detailing time and task for attorneys' fees claimed, including attaching invoices and billing records, by **March 21, 2007** and, after consideration, the Court will enter an amended judgment awarding a reasonable fee as appropriate.

The Clerk is directed to CLOSE this case.

IT IS SO ORDERED.

/s/
Janet Bond Arterton
United States District Judge

**Dated at New Haven, Connecticut this 7th day of March, 2007.**